**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

-vs-              Case No. 6:08-cv-891-Orl-35DAB

**FOUNTAIN VIEW APARTMENTS, INC.**
**and MILDRED CHASTAIN,**

    **Defendants.**

_____

## ORDER

This cause came on for consideration with oral argument[1] on the following motion filed herein:

> **MOTION:** **RENEWED MOTION TO QUASH SUBPOENA AND FOR PROTECTIVE ORDER (Doc. No. 54)**
>
> **FILED:** April 10, 2009
>
> _____
>
> **THEREON** it is **ORDERED** that the motion is **GRANTED.**

The United States Department of Housing and Urban Development ("HUD") filed suit alleging race and familial-status discrimination in violation of the Fair Housing Act against Defendant Fountain View Apartments, Inc., and its manager (collectively "Fountain View"). Intervening Plaintiffs Lewarna Williams, and Donnell Williams subsequently filed suit asserting individual claims for race and familial status discrimination. Doc. Nos. 8, 26, 27. In the Complaint, the United States alleges that on January 3, 2008, and January 31, 2008, Post-Newsweek Orlando, Inc.'s affiliate station

---

[1]Oral argument was heard on June 23, 2009.

WKMG Channel Six ("Channel Six") conducted "simulated housing transactions[2]" with Fountain View and compared the results of those transactions to determine if Fountain View's conduct was discriminatory. Doc. No. 1 ¶ 8. Channel Six's investigation allegedly revealed that Fountain View was engaged in discriminatory housing practices when agents told "white persons that a selling point of the apartment complex is that they do not have any black residents"; denied "the availability of apartments to African-American persons while at the same time telling white persons about available apartments"; refused "to show apartments to African-American persons while at the same time showing apartments to white persons"; and discouraged "African-American persons from applying for an apartment while encouraging white persons to apply." Doc. No. 1 ¶ 18.

Fountain View has learned that the Channel Six investigation involved videotaped interviews of Defendant Mildred Chastain, Jimmie Stevens[3] (the owner of Fountain View Apartments), Intervening Plaintiffs Lewarna Williams, Donnell Williams, and Rachael Hunter, as well as Channel Six employees who served as "testers" seeking information about available apartments at Fountain View Apartments (the "Testers"). At the hearing, Channel Six's counsel stated there were approximately eight Testers.

The investigations from January 3 and 31 were broadcast and published (on its website) in news stories by Channel Six; only selected portions of some of the interviews with the parties/agents

---

[2]According to the Complaint, such testing is a simulation of a housing transaction that compares responses given by housing providers to different types of apartment-seekers to determine whether illegal discrimination is occurring. Doc. No. 1 ¶ 8.

[3]There is a Motion to Amend the Complaint pending which seeks to add Mr. Stevens, the owner of Fountain View Apartments, as a defendant. Doc. No. 69. Whether Mr. Stevens is considered an agent or a defendant, the analysis is the same for purposes of the Motion to Quash.

and the Testers were aired. Fountain View subpoenaed Channel Six for the unaired portions of all of the interview videotapes, as well as all Channel Six communications and production notes relating to the investigation.

Channel Six moved to quash the subpoena on the basis of the journalist privilege. The government did not file a response to the Motion to Quash because it had received the broadcast portions of the interviews and at this time does not seek any further discovery from Channel Six. At the hearing, Channel Six conceded that the Testers were not "journalists," merely eyewitnesses, and the journalist privilege was not being asserted to shield the videotapes of the Testers on that basis, but under the general journalist privilege Channel Six asserts as to all of the unaired "out-takes" that the Channel Six reporter and editors deleted from the broadcasts.

*Procedural History*

On December 3, 2008, Fountain View served its subpoena on Channel Six seeking discovery of the unaired or "outtake" portions of all of the interviews in the January 3 and 31 investigations; all Channel Six employee communications (internally and with government agencies) about the investigation of Fountain View, as well as any documents and production notes by Channel Six employees relating to the investigation. The subpoena was served and a motion to quash was originally filed on December 30, 2008. Prior to filing the original motion to quash Channel Six agreed to release any materials that had been already released to government agencies and any materials already published or broadcast to the public[4] (*see* Doc. No. 55 at 4).

---

[4] At the hearing, Fountain View's present counsel represented that she had not received any videotapes (although they may have been sent to Fountain View's previous counsel). Counsel for Channel Six agreed to re-produce copies of the broadcast videotapes expeditiously to Fountain View's present counsel.

The Motion to Quash was originally granted as unopposed, but the order was subsequently vacated when Fountain View belatedly filed its opposition. The Motion was subsequently denied without prejudice with leave to refile if the case did not resolve at mediation. Channel Six filed its Renewed Motion to Quash April 4, 2009; Fountain View filed its opposition in support of enforcement of the subpoena on April 13, 2009, and oral argument was held on June 23, 2009.

*Standard of Review*

The parties dispute whether a journalist privilege under federal evidence law or state statute, Florida Statute § 90.5015, applies in this case[5]. Because the claims before the Court are brought under the Fair Housing Act and jurisdiction is based on a federal question, the federal law of evidence governs in this case. *See* Fed. R. Evid. 501 (privileges applied in federal question cases are governed by the "principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience").

It is undisputed that Channel Six qualifies as a news agency and the information Fountain View seeks to compel was gathered as part of a news story; however, the videotaped interviews with the Testers and the parties/agents were not garnered from confidential sources. The former Fifth Circuit[6] case of *Miller v. Transamerican Press*, held that reporters have a First Amendment privilege

---

[5] Channel Six argues the Court should apply Florida's reporter privilege along with federal common law. Section 90.5015 provides that to overcome the journalist's privilege there must be "a clear and specific showing" that: (a) the information is relevant and material to unresolved issues that have been raised in the proceeding for which the information is sought; (b) the information cannot be obtained from alternative sources; and (c) a compelling interest exists for requiring disclosure of the information. FLA. STAT. § 90.5015. As a practical matter, as another Florida federal court has noted, "[A]pplication of either the federal common law standard or the newly announced Florida standard will yield the same result, as the factors of each are virtually indistinguishable." *McCarty*, 195 F.R.D. at 46.

[6] Fifth Circuit decisions rendered prior to September 30, 1981 are binding precedent on this Court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

protecting their refusal to disclose confidential sources; however, the privilege is not absolute. 621 F.2d 721, 725, *mod. on reh'g*, 628 F.2d 932 (5th Cir. 1980) (per curiam). The *Miller* holding has been subsequently recognized in the Eleventh Circuit as extending beyond the scope of confidential sources and applying to other types of "news gathering" information gleaned in investigations. *See United States v. Caporale*, 806 F.2d 1487, 1504 (11th Cir. 1986) (quoting *Miller* at length); *Loadholtz v. Fields*, 389 F.Supp. 1299, 1302-03 (M.D. Fla.1975) (holding "news gathering" also protected by the First Amendment).

In the Eleventh Circuit, the applicable standard of review for application of the journalist's or reporter's privilege is set forth in *United States v. Caporale*, 806 F.2d 1487, 1503 (11th Cir. 1986). *See also Price v. Time, Inc.*, 416 F.3d 1327, 1342 (11th Cir. 2005) (citing *Miller* and *Caporale*); *McCray v. Beary*, Case No. 97-1553-Civ-Orl-18A, 1999 WL 1027042 (M.D. Fla. Feb. 12, 1999) (in civil case, applying *Caporale* in denying motion to depose reporter to ascertain content of alleged conversation with law enforcement source); *McCarty v. Bankers Ins. Co.*, 195 F.R.D. 39 (N.D. Fla. 1998) (seeking unpublished statements of non-confidential defendants). Under *Caporale*, information may only be compelled from a reporter claiming privilege if the party requesting the information can show: (1) it is highly relevant; (2) necessary to the proper presentation of the case; and (3) unavailable from other sources. *Caporale*, 806 F.2d at 1504. This standard applies even when the source of the information provided to the reporter is not confidential. *Loadholtz*, 389 F.Supp. at 1302-03.

In a Middle District of Florida case nearly twenty-five years ago, the trial court described the issues raised when civil litigants seek a reporter's notes and information:

> The issue raised is whether the First Amendment prevents compulsory disclosure in civil litigation of materials developed in preparation of a newspaper article. This Court concludes that the paramount interest served by the unrestricted flow of public information protected by the First Amendment outweighs the subordinate interest served by the liberal discovery provisions embodied in the Federal Rules of Civil Procedure.
>
> Analysis in this area must necessarily begin with the axiomatic principle that the First Amendment occupies a preferred position among the individual rights conferred by the Constitution and that any infringements thereon are closely scrutinized and strictly limited. The concept of freedom of the press as guaranteed by the First Amendment is the keystone of our constitutional democracy and is broad enough to include virtually all activities for the press to fulfill its First Amendment functions. Only a "compelling state interest in the regulation of a subject within the State's constitutional power to regulate can justify limiting First Amendment freedoms." *NAACP v. Button*, 371 U.S. 415, 438 (1963). Any justifiable infringement upon First Amendment rights must be no greater than is necessary to vindicate legitimate subordinating interests.

*Loadholtz v. Fields,* 389 F.Supp. 1299, 1300-01 (M.D. Fla. 1975) (internal citations omitted).

*Overall investigation*

Fountain View argues as to the first two prongs that the entire Channel Six news investigation is highly relevant because the investigation was directed at the same issue as HUD's FHA claims, *i.e.,* whether Fountain View has a pattern and practice of discriminating against applicants, like Williams and other Testers, on the basis of race in violation of the Fair Housing Act. Doc. No. 55 at 6. HUD's inclusion in its Complaint of direct references to Channel Six's investigation is an indication on its face of the relevance of the investigation. Doc. No. 1 ¶ 8. Fountain View, however, also seeks the unaired portions of the investigation, as well as the reporter's notes and communications related to the investigation. Fountain View asserts that Channel Six made an accusation of discrimination and then aired only portions of the investigation that supported its argument that Fountain View was

discriminating. Doc. No. 55 at 11. Fountain View contends that the full content of the videotapes including the unaired portions or "out-takes" is necessary to defend against the discrimination claims, to determine whether Channel Six allegedly conducted a biased investigation or to learn the full context of the statements made – including the out-take material – of the allegedly discriminatory behaviors of which Fountain View is accused. Fountain View argues that it is also entitled to the reporter's notes and internal emails with editors and/or drafts of the investigation scripts because the journalists have "interjected" themselves into the story and the Government then incorporated the story into the Complaint.

*Reporter's notes, drafts, and emails to editors*

As a preliminary matter, the Court must divide the request into two general categories: 1) reporter's notes, internal emails with editors about the story, and draft of scripts[7]; and 2) video out-takes. Because Channel Six has already revealed the identities of the Testers, the reporter's notes, internal emails with editors about the Channel Six investigation, and draft of scripts are not relevant to the case. The editor's and reporter's motivations in investigating the story or what *they* thought of the interviewees' reactions are not relevant; the credibility of the witnesses and/or their intentions underlying their reactions during the interviews will be an issue for the *jury* to decide in accordance with appropriate instructions. The Motion to Quash is **GRANTED** as to the reporter's notes, internal emails with editors about the story, draft of scripts, or other requests of the sort. Fountain View has

---

[7]There did not appear to be a dispute at the hearing over production of emails between Channel Six employees and government agencies.

not met the first two prongs of the federal evidentiary journalist's privilege. *See Caporale*, 806 F.2d at 1503.

*Video Footage*

Fountain View seeks the out-takes from the interviews with the parties to the case (or their agents), the Testers, and reporters.[8] Further subdividing this category of material, Fountain View is not entitled to the video out-takes of the reporters' monologue – such material is no different from the reporter's notes or scripts and is not relevant.

With respect to out-takes of the parties and agents, the analysis must go farther. It is likely that at least some of the recorded conversations may be pertinent to the issues in this case. However, more must be shown to overcome the conditional privilege. The third prong requires a showing that the information sought is not be available from any other source. *Caporale*, 806 F.2d at 1503. It appears here that all the participants are available to testify as to what occurred, and there has been no showing that their recollections will be impaired or otherwise unreliable. Channel Six accordingly argues that the video out-takes sought in the subpoena could be obtained by alternative discovery mechanisms, *i.e.*, depositions of the parties (or agents) and the Testers. Doc. No. 54 at 7. Fountain View argues that deposing the individuals is not the equivalent of having the complete (aired and unaired) recordings from the investigation. Doc. No. 55 at 9. Certainly at this stage of the proceedings, this contention is speculative. There is no *a priori* reason to suppose that current testimony by the witnesses, as developed in the adversary process, would not be at least the equivalent of a portion of

---

[8] Counsel for Channel Six could not say at the hearing whether there were any out-takes of videotape of government officials.

a reporter's inquiry, created for different purposes. In the absence of any showing of an important witness' unavailablity, the privilege is not overcome.

As to any remaining material, nothing suggests that any of the recordings show actual "testing." Thus, it does not appear that any actual evidence of pertinent events is involved. Based on counsel for Channel Six's representations at the hearing, the "raw footage" of the Testers that was edited from the broadcast consists of the Testers walking up to or away from the Fountain View and does not contain any conversation. Such evidence is hardly crucial to presentation of the case.

The Motion to Quash is **GRANTED** in accordance with the foregoing, subject to possible reconsideration should there be a greater showing of necessity.

**DONE** and **ORDERED** in Orlando, Florida on July 1, 2009.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record